SHERMAN, Appellant,

v.

PEARSON, Appellee.

[Cite as *Sherman v. Pearson* (1996), 110 Ohio App.3d 70.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950181.

Decided March 27, 1996.

*Patrick F. Carroll,* for appellant.

*Douglas C. Prince,* for appellee.

GORMAN, Presiding Judge.

This appeal presents a single issue: whether the personal-injury claim of the plaintiff-appellant, Adrienne Sherman, filed in the Hamilton County Court of

Common Pleas, was a compulsory counterclaim which she was required to assert in the Hamilton County Municipal Court in the landlord's earlier action against her for forcible entry and detainer and rent. We hold that the common pleas court correctly held in its written decision that, under Civ.R. 13(A), Sherman's personal injury claim was a compulsory counterclaim, and therefore summary judgment for the landlord was properly granted.

## I

Sherman, a tenant in a second-floor apartment, alleged that on November 15, 1992, she sustained personal injuries from a fall on stairs in a common area of her landlord's apartment building. Forty-nine days later, on January 3, 1993, her landlord filed an action against her in the municipal court for forcible entry and detainer and for rent. On February 1, 1993, the municipal court issued a writ of restitution to the landlord. On March 1, 1993, the municipal court entered default judgment against Sherman for rent on the landlord's second count. On August 25, 1994, the municipal court journalized an entry of satisfaction of the judgment. On November 10, 1994, Sherman filed in the court of common pleas a complaint against the landlord for damages caused by her fall on the stairs, which she alleged were negligently maintained. On February 7, 1995, the common pleas court granted the landlord's motion for summary judgment because of Sherman's failure to assert the personal injury claim as a counterclaim in her landlord's previous action for forcible entry and detainer and for rent.

## II

The Ohio Landlord and Tenant Act, specifically R.C. 5321.04(A)(3), provides that a landlord can institute an action in forcible entry and detainer for breach of the tenant's obligations contained in the parties' rental agreement. Forcible entry and detainer is an action at law based on contract. *Behrle v. Beam* (1983), 6 Ohio St.3d 41, 6 OBR 61, 451 N.E.2d 237, paragraph one of the syllabus. It is subject to a counterclaim by the tenant. *Jemo Assoc., Inc. v. Garman* (1982), 70 Ohio St.2d 267, 24 O.O.3d 358, 436 N.E.2d 1353.

Counterclaims in Ohio are governed by Civ.R. 13, which provides:

"(A) A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction * * *."

In defining what transactions constitute a compulsory counterclaim, the Ohio Supreme Court has adopted the "logical relation" test. *Rettig Ent., Inc. v.*

*Koehler* (1994), 68 Ohio St.3d 274, 626 N.E.2d 99. The purpose behind the test is "to avoid multiplicity of actions and to achieve a just resolution by requiring in one lawsuit the litigation of all claims arising from common matters." *Id.* at 278, 626 N.E.2d at 103. To this end, in determining whether claims arise from the same transaction or occurrence, *i.e.*, involve "common matters," Ohio courts employ a liberal construction favoring compulsory counterclaims under Civ.R. 13(A), as do their federal counterparts under Fed.R.Civ.P. 13(a). *Maduka v. Parries* (1984), 14 Ohio App.3d 191, 192, 14 OBR 209, 211, 470 N.E.2d 464, 466.

Although one of many different standards employed by courts to determine whether a counterclaim is compulsory, the logical-relation test is recognized to be the most flexible in its approach.

"Unlike [the other tests], under the [logical-relation test] * * * the principal consideration in determining whether a counterclaim is compulsory rests on the efficiency or economy of trying the counterclaim in the same litigation as the main claim. As a result, the convenience of the court, rather than solely the counterclaim's relationship to the facts or issues of the opposing claim, will be controlling in counterclaim classification. The hallmark of this approach, therefore, is flexibility. Although the [logical-relation] test has been criticized for being overly broad in scope and uncertain in application, it has by far the widest acceptance among the courts." Friedenthal, Civil Procedure (1985) 352, Section 6.7.

Emphasizing the flexibility afforded by the logical-relation test, the court in *Rettig* noted:

" ' "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. * * * That they are not precisely identical, or that the counterclaim embraces additional allegations * * * does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim.' *Moore v. New York Cotton Exchange* (1926), 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750, 757." *Rettig, supra,* 68 Ohio St.3d at 278–279, 626 N.E.2d at 103.

Sherman principally argues that because her claim for damages sounds in tort, it clearly has no "logical relation" to her landlord's previous action for entry and detainer and for rent, which arises out of contract. In response to this argument we note initially that Sherman's claim for damages does not sound entirely in tort. Her claim is based upon her landlord's alleged failure to maintain a stairwell in a common area of the premises. The complaint sets forth

two separate counts. The first count is based in common-law negligence. The second count, however, is a claim for damages alleging a breach of R.C. 5321.04(A)(3), the section of the Landlord and Tenant Act which expressly requires a landlord who is a party to a rental agreement to "[k]eep all common areas of the premises in a safe and sanitary condition." Under R.C. 5321.12, a party has a statutory remedy for damages for the breach of any duty imposed under the Act.

■ It is therefore inaccurate to characterize Sherman's personal injury claim as purely a tort claim. However, even if Sherman's claim for damages had sounded entirely in tort, as she argues, the difference between the nature of her action and that of her landlord would not be dispositive of the issue before us. As this court has previously pointed out, a tort claim may be a compulsory counterclaim in a contract action. *Koukios v. Marketing Dynamics, Inc.* (Sept. 7, 1994), Hamilton App. No. C–920913, unreported, 1994 WL 481769. In *Koukios*, a tort claim for conversion of trade secrets was held to be a compulsory counterclaim in an action for breach of contract. The difference in the nature of the actions is not paramount; rather, the issue is whether the two claims have a sufficient legal or factual nexus to satisfy the "logical-relation" test.

■ To determine if there is a sufficient connection between her landlord's previous action and Sherman's claim for damages, it is important to note the extent to which the Landlord and Tenant Act changed the previous common-law relationship of landlords and tenants. As the Ohio Supreme Court recognized in *Shroades v. Rental Homes* (1981), 68 Ohio St.2d 20, 23, 22 O.O.3d 152, 154, 427 N.E.2d 774, 776, common-law tort immunities for landlords not in possession had historically made it difficult for tenants to recover for injuries sustained because of defective rental premises. Compounding the difficulty was the torpid pace with which courts had come to recognize implied warranties of habitability. The Ohio Landlord and Tenant Act negated the common-law immunities and in their stead imposed upon the landlord a series of specific statutory duties which arise as a matter of law whenever the parties enter into a rental agreement. As we have seen, one of these legislatively enacted duties is to "[k]eep all common areas of the premises in a safe and sanitary condition." The Act not only imposes specific duties but provides a statutory remedy for damages. R.C. 5321.12. While the Act's statutory remedies have been deemed "cumulative" to those that existed at common law, *id.* at 25, 22 O.O.3d at 155, 427 N.E.2d at 777, the landlord's duties set forth in the Act nonetheless have a decided bearing upon a tenant's negligence action since their breach constitutes negligence *per se. Id.* See, also, *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780. While sounding in tort, a negligence action brought against a landlord for defective rental premises relies heavily upon evidence of the landlord's noncom-

pliance with the Landlord and Tenant Act and the duties that arise from the rental agreement.

It is disingenuous, therefore, to suggest that simply because her landlord's action for forcible entry and detainer and for rent was a contract action, and Sherman's claim for damages contained a component of common-law negligence, the two actions do not have any nexus. The rental agreement upon which the landlord had earlier sued gave rise to the landlord's statutory duty to keep the common area safe, which in turn provided Sherman with a separate claim for damages based upon a breach of the Landlord and Tenant Act. Furthermore, Sherman's negligence action depends upon evidence that her landlord tortiously breached the statutory duties that the Landlord and Tenant Act attaches to the rental agreement.

The Landlord and Tenant Act, specifically R.C. 5321.03(B), expressly provides that the landlord's action against the tenant "does not prevent the tenant from recovering damages for any violation by the landlord of the rental agreement." Under R.C. Chapter 1923, any defense relating to forcible entry and detainer may be asserted at trial and a counterclaim may be interposed. R.C. 1923.06(B).

For these reasons, we hold that there was a distinct "logical relation" between Sherman's action for damages and her landlord's previous action. Both actions involved rights and duties arising from the rental agreement. Accordingly, the logical-relation test for a compulsory counterclaim, rather than merely a permissive counterclaim, is satisfied. See McCormac, Ohio Civil Rules Practice (2 Ed.1988) 199, Section 8.04.

Our holding in this regard is in accordance with the decision of the Cuyahoga County Court of Appeals in *Maduka, supra,* 14 Ohio App.3d 191, 14 OBR 209, 470 N.E.2d 464, wherein the court upheld the dismissal of the tenant's suit upon the basis that her claims, including a tort claim for personal injury, were precluded as compulsory counterclaims to the landlord's previously filed and pending action for eviction and damages. As the court in *Maduka* stated in applying the logical-relation test:

"It is logical to require the plaintiff to raise her claims in the present case as counterclaims in the Housing Court. For analysis of her contention reveals that all, including those sounding in tort, arise from complaints stemming from the landlord tenant relationship." *Id.* at 192, 14 OBR at 211, 470 N.E.2d at 466.

A similar result was also reached in *Lujan v. Smith* (Nov. 11, 1983), Lucas App. No. L–83–197, unreported, 1983 WL 6990, in which it was held that a landlord's claim for rent was a compulsory counterclaim to a tenant's claim for damages stemming from the landlord's failure to provide natural gas services to the rental premises. The court in *Lujan* stated that a logical relationship existed

between the two claims because they both "arose out of the same transaction, *i.e.,* the rental lease agreement, as appellee became a landlord, with all attendant duties, and appellant became a tenant, with all attendant obligations, by virtue of entering into such an agreement."

We disagree with Sherman's argument that it is an absurdity to bar her claim for personal injuries upon the basis of her landlord's previous action for possession and unpaid rent given their essential differences. Civ.R. 13(A) contemplates that the interests of judicial economy and fairness will be served. Sherman's alleged injuries occurred well in advance of the action brought by her landlord. She waited almost a year to file her claim. At the beginning of that year, she was involved in litigation with her landlord involving the action for forcible entry and detainer and for rent. It was not until that action was fully concluded and she had satisfied the judgment against her that she brought her present personal injury claim.

Although Sherman argues that because the amount of her counterclaim exceeded the municipal court's monetary jurisdiction, her claim for damages from personal injuries was not the subject of a compulsory counterclaim under Civ.R. 13(A), we find no merit in this position. In *Behrle v. Beam,* 6 Ohio St.3d at 45, 6 OBR at 64, 451 N.E.2d at 240, fn. 1, the Ohio Supreme Court said that "[i]f a party has a compulsory counterclaim and its amount is over the monetary jurisdiction of the municipal court, it still must be pleaded in the responsive pleading." The remedy is to certify the compulsory counterclaim to the court of common pleas pursuant to Civ.R. 13(J).

The policy of deciding all claims arising from the parties' obligations under the rental agreement, including those that result as a matter of law from their relationship under the Landlord and Tenant Act, is in furtherance of judicial economy. Sherman's claim for damages based upon the landlord's alleged failure to maintain the premises and the landlord's previous action to oust Sherman from possession have a common source—the rental agreement and the obligations and duties which the Landlord and Tenant Act imposes as a consequence of the agreement. Therefore, in view of the liberal construction given to Civ.R. 13(A) in favor of compulsory counterclaims, they should have been litigated together.

The judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

HILDEBRANDT, J., concurs.

PAINTER, J., dissents.

PAINTER, Judge, dissenting.

Under Civ.R. 13(A), a counterclaim to an action *must* be asserted if (1) it exists at the time the complaint is filed; (2) it arises from the same "transaction or occurrence"; and (3) no additional parties are required over whom the court cannot acquire jurisdiction. Sherman disputes only the second prong.

Sherman advances six propositions of law in support of the assignment, but they all say essentially the same thing: the "occurrence" that served as the basis for Pearson's action is not the same as the "occurrence" that serves as the basis for Sherman's action because negligent maintenance resulting in a slip-and-fall injury is not the same as the nonpayment of rent.

The Supreme Court of Ohio has held that the test for determining whether a counterclaim arises from the same "transaction or occurrence" is the "logical relation" test. *Rettig Ent., Inc. v. Koehler* (1994), 68 Ohio St.3d 274, 626 N.E.2d 99. The *Rettig* court specifically held that:

"[A] compulsory counterclaim is one which is logically related to the opposing party's claim where separate trials on each of their respective claims would involve *a substantial duplication of effort and time by the parties and the courts,* can be used to determine whether claims between opposing parties arise out of the same transaction or occurrence." (Emphasis added.) *Id.* at paragraph two of the syllabus.

The goal behind this test, and Civ.R. 13(A), is to avoid repetitive actions and to achieve a uniform resolution by requiring in one lawsuit the litigation of all claims arising from common matters. *Id.* The court in *Rettig* elaborated that "claims are compulsory counterclaims where they 'involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.'" *Id.* at 279, 626 N.E.2d at 103, quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.* (C.A.3, 1961), 286 F.2d 631, 634.

In *O'Brien v. Citicorp Mtge., Inc.* (Feb. 24, 1994), Franklin App. No. 93AP–1074, unreported, 1994 WL 57675, the court was faced with a number of counterclaims which stemmed from mortgage loan transactions, and a counterclaim alleging that the mortgage company disseminated libelous or slanderous information about the defendant because of the problems with the loan transactions. Even though all of the counterclaims were between the same parties and were all at least tangentially related to the original loan, the *O'Brien* court recognized that only those claims that were based on the same facts and circumstances—the mortgage contract itself—were compulsory under Civ.R. 13(A). The *O'Brien* court allowed a separate action for the alleged libel and slander.

In the case at bar, the only facts common to both actions are that (1) the litigation is between the same parties, and (2) both cases involve a landlord-tenant relationship. However, the facts surrounding the alleged negligent maintenance of the stairwell and the resulting fall by Sherman have nothing whatsoever to do with Sherman's failure to pay rent. There would literally be no substantial duplication of effort and time by the parties and the courts because of the differing issues of law based on the different sets of facts. Each set of facts exists independent of the other set of facts. Separate trials would not significantly alter the judicial economy, because there is no dispute that these parties are the same and that a tenant-landlord relationship existed at the time of each set of events.

Civ.R. 13(A) requires the same "transaction or occurrence" before a counterclaim becomes compulsory. A reading of the separate facts involved in these two actions reveals that Pearson's alleged negligent maintenance of a stairwell is not even remotely related to Sherman's nonpayment of rent, much less arising from the same transaction or occurrence.

Therefore, *Maduka v. Parries* (1984), 14 Ohio App.3d 191, 14 OBR 209, 470 N.E.2d 464, is distinguishable on our facts, because in that case, a substantial duplication of effort would have occurred based on some of the claims that were asserted separately.[1] We should not follow *Maduka* blindly, based simply on the fact that both claims involve a tenant-landlord relationship.

As the majority demonstrates, the Landlord Tenant Act was originally enacted as a remedial measure enabling tenants "to recover for injuries sustained because of defective rental premises" and creates an affirmative duty in landlords to "keep all common areas of the premises in a safe and sanitary condition." Under the majority opinion, the Act itself becomes a trap for the unwary.

Additionally, I believe that the majority opinion severely undercuts Civ.R. 13(A) and contravenes the Ohio Supreme Court's ruling in *Rettig*, which was decided ten years after *Maduka*. Pearson should not have been granted summary judgment because the claim was not compulsory either under Civ.R. 13(A) or under *Rettig*. For these reasons, I respectfully dissent.

---

1. Even in that case, only some of the claims should have been compulsory under the "logical-relation" test, while others should have been permissive under Civ.R. 13(B), but that court erroneously lumped them all together. However, at a minimum, *Maduka* certainly cannot be taken to set up a bright-line rule that all personal injury claims are compulsory counterclaims to forcible entry and detainer claims when based on a landlord's duty to a tenant.