[Cite as *Cox v. Glenville Homes, III, L.P.*, 2026-Ohio-1053.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

LEARIA COX,                                    :

    Plaintiff-Appellant,          :

                           No. 115506

    v.                                         :

GLENVILLE HOMES, III LP, ET AL.,    :

    Defendants-Appellees.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 26, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-25-113715

---

### *Appearances:*

Gary Cook, *for appellant.*

Hoffman Legal Group, LLC, and Matthew S. Flemming,
*for appellees.*

DEENA R. CALABRESE, J.:

{¶ 1} Plaintiff-appellant Learia Cox appeals the trial court's order granting summary judgment in favor of defendants-appellees Glenville Homes III, L.P., and Famicos Foundation ("Glenville," "Famicos," or collectively "appellees"). Finding no merit to the appeal, we affirm.

## I. Facts and Procedural History

{¶ 2} Cox lived in a Cleveland, Ohio property pursuant to a lease agreement with appellees, who were jointly identified in the lease as "Landlord." This dispute arose from that landlord-tenant relationship. Cox's lease contained an option to purchase the property. In the complaint at issue in this appeal, filed with the Cuyahoga County Court of Common Pleas on March 14, 2025, Cox alleged that she had exercised the option to purchase and that appellees had breached the lease agreement by refusing to execute required paperwork. As explained more fully below, Cox also contended that appellees had breached the lease agreement by filing an eviction action against her more than a year earlier in the Cleveland Municipal Court's Housing Division.[1]

{¶ 3} Glenville filed that housing division case, Cleveland M.C. No. 2024-CVG-002549, on February 23, 2024. In that action, the housing court granted the eviction on May 30, 2024. Cox appealed the housing court judgment to this court on June 10, 2024, in *Glenville Homes III v. Cov*, 8th Dist. Cuyahoga No. 114030. Prior to any substantive decision on appeal, however, Glenville regained possession of the property. On July 8, 2024, therefore, this court dismissed the appeal as moot.

{¶ 4} On June 21, 2024, while the appeal was still pending, Cox filed a counterclaim in housing court.[2] While the appearance docket identifies the filing as

---

[1] The lease agreement, along with Glenville's complaint in forcible entry and detainer and for money damages, were attached to Cox's complaint.

[2] Appellees attached a printout of the housing court docket as Exhibit A to their April 15, 2025 motion to dismiss. They filed an updated and certified copy of the docket under cover of affidavit in a June 18, 2025 supplemental filing.

Cox's "amended counterclaim," it is the first reference on the docket to a counterclaim. Cox also pursued other avenues of relief, including a writ of mandamus filed with the Ohio Supreme Court and the removal of the housing court case to federal district court. Neither the writ nor the removal was met with success.

{¶ 5} On February 14, 2025, following remand from federal district court, the housing court granted Glenville's motion to strike Cox's counterclaim. In this appeal, Glenville states that Cox's counterclaim was "dismissed for being filed without leave of Court." (Appellees' brief at p. 2.) The housing court's February 14, 2025 journal entry merely states that the housing court granted appellees' motion to strike. The record on appeal does not include Glenville's motion to strike. On April 2, 2025, however, the housing court docketed an entry indicating that Cox had filed a timely answer, but "did not file a counterclaim." The entry goes on to state that the June 21, 2024 pleading "titled Amended Counterclaim" was "stricken as untimely" and that "[t]herefore, there is no counterclaim pending."

{¶ 6} The timeline now returns to the action at issue in this appeal. On March 14, 2025, while Glenville's claim for money damages was still pending in housing court and exactly one month after the housing court had dismissed her counterclaim, Cox filed a complaint against appellees in the Cuyahoga County Court of Common Pleas. In her complaint, Cox asserted claims arising from and expressly tied to the lease and the landlord-tenant relationship. Count 1 alleges breach of contract and specifically references the lease. Count 3, unjust enrichment, references items such as "rent, deposit," and "earnest money" purportedly retained

by Glenville. Count 4 seeks injunctive relief barring Glenville from preventing Cox's access to the property. Count 5 requests a declaratory judgment as to the lease and other aspects of the landlord-tenant relationship. Count 2 purportedly sounds in negligence and breach of fiduciary duties but contains no additional facts suggesting it involves anything other than the landlord-tenant relationship.

{¶ 7} Appellees filed a motion to dismiss premised on Civ.R. 12(B)(1) and 12(B)(6) on April 15, 2025, arguing that the housing court had exclusive jurisdiction over Cox's claims. Pertinent to its Civ.R. 12(B)(1) arguments, appellees attached the housing court docket to their motion to dismiss. Appellees argued that Cox's claims were Civ.R. 13(A) compulsory counterclaims that she was required to raise in the still-pending housing court action and that the general division further lacked jurisdiction pursuant to R.C. 1901.181.

{¶ 8} In her brief in opposition filed April 21, 2025, Cox conceded that the trial court was permitted to review materials outside the complaint when deciding a motion premised on Civ.R. 12(B)(1) but argued that consideration of the docket in reference to Civ.R. 13(A) compulsory counterclaims was improper, because such arguments purportedly turned on res judicata. In addition, and despite the complaint's focus on the lease attached to it and on various other aspects of the landlord-tenant relationship, Cox argued that her claims were not only "new" but also "independent" and otherwise "outside of any eviction arena, albeit with certain overlapping facts and/or issues." On April 28, 2025, appellees filed a reply brief that

included arguments purporting to clarify the differences and relationships between and among res judicata, Civ.R. 13, and the jurisdictional-priority rule.

{¶ 9} While appellees' motion to dismiss was still pending, the housing court heard Glenville's claim for money damages on April 29, 2025, and rendered judgment in favor of Glenville on May 14, 2025. There is no indication in the record that Cox appealed the final judgment of the housing court, including its dismissal of her counterclaim.

{¶ 10} On June 3, 2025, the trial court converted appellees' motion to dismiss to a motion for summary judgment pursuant to Civ.R. 12(B), apparently agreeing with Cox that the motion to dismiss raised res judicata issues. The trial court expressly provided both sides with an opportunity to submit supplemental briefs. Appellees submitted a supplemental brief on June 18, 2025, arguing that the housing court had entered final judgment in Glenville's favor on both its eviction and money-damages claim. Appellees' brief included an affidavit identifying a certified copy of the housing court docket and copies of the housing court magistrate's order and the housing court's final judgment entry. The supplemental brief expressly reserved appellees' Civ.R. 12(B)(1) arguments but then further argued that because the housing court had entered final judgment, res judicata barred Cox's claim.

{¶ 11} Cox did not respond with additional briefing, affidavits, or other Civ.R. 56(E) summary judgment materials. On August 6, 2025, the trial court filed an opinion granting appellees' motion to dismiss, finding that it "lacks subject matter

jurisdiction over this lawsuit." The trial court reasoned that Cox's complaint "raises compulsory counterclaims that should have been raised in the Eviction Case." The trial court expressly declined to consider appellees' remaining arguments.

{¶ 12} This timely appeal followed.

## II. Assignment of Error

{¶ 13} Cox presents a single assignment of error for our review:

Reviewing Appellees-Defendants' Motion for Summary Judgment de novo, the Record is clear and convincing that the trial court erred to the prejudice of the Appellant-Plaintiff by granting the Appellees-Defendants' Motion to Dismiss, which was converted to a Motion for Summary Judgment, and dismissing the Appellant-Plaintiff's Complaint.

{¶ 14} We overrule Cox's sole assignment of error and affirm the judgment of the trial court.

## III. Analysis

### A. Standard of Review

{¶ 15} "Our standard of review on a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction is de novo." *Craig v. Cromes*, 2025-Ohio-5759, ¶ 11 (8th Dist.), citing *Rheinhold v. Reichek*, 2014-Ohio-31, ¶ 7 (8th Dist.). "When ruling on a Civ.R. 12(B)(1) motion, the trial court must determine whether it has the authority to decide the matter before it." *A.L.W.A.Y., LLC v. Ohio DOT*, 2025-Ohio-4850, ¶ 14 (8th Dist.), citing *Rheinhold* at ¶ 7. In conducting our de novo review, we apply the same standards as the trial court. *A.L.W.A.Y., LLC* at ¶ 14, citing *Muhammad v. Ohio Civ. Rights Comm.*, 2013-Ohio-3730, ¶ 16 (8th Dist.), citing *GNFH, Inc. v. W. Am. Ins. Co.*, 2007-Ohio-2722, ¶ 16 (2d Dist.).

{¶ 16} "Subject-matter jurisdiction is 'a condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.'" *A.L.W.A.Y., LLC* at ¶ 15, quoting *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11.

{¶ 17} In determining subject-matter jurisdiction pursuant to a Civ.R. 12(B)(1) motion, the trial court "'is not confined to the allegations of the complaint and it may consider material pertinent to such inquiry without converting the motion into one for summary judgment.'" *A.L.W.A.Y., LLC* at ¶ 15, quoting *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211 (1976), paragraph one of the syllabus. In the present action, the trial court converted appellees' motion to dismiss to a motion for summary judgment. Appellees then supplemented their motion with an affidavit attaching updated housing court docket and judgment entries. Whether viewed as simply additional and appropriate material pertinent to the subject-matter jurisdiction inquiry under *Southgate*, or as Civ.R. 56(E) materials in support of summary judgment based on res judicata, the distinction is academic. The issue of whether res judicata applies in a particular situation is likewise a question of law that is reviewed under a de novo standard, with no deference to the trial court. *T.C. v. R.B.C.*, 2025-Ohio-1544, ¶ 30 (8th Dist.), citing *Kobal v. Kobal*, 2022-Ohio-812, ¶ 8 (8th Dist.), *Hempstead v. Cleveland Bd. of Edn.*, 2008-Ohio-5350, ¶ 6 (8th Dist.), and *Gilchrist v. Gonsor*, 2007-Ohio-3903, ¶ 16 (8th Dist.). "'[W]e independently review the record to determine whether res judicata applies.'" *T.C.* at ¶ 30, quoting *Hempstead* at ¶ 16, citing *Gilchrist* at ¶ 16.

**B. Discussion**

{¶ 18} "Civ.R. 13(A) governs compulsory counterclaims. Under this rule, all existing claims between opposing parties that arise out of the same transaction or occurrence must be litigated in a single lawsuit, regardless of which party initiates the action." *Ferrara v. Vicchiarelli Funeral Servs.*, 2016-Ohio-5144, ¶ 11 (8th Dist.), citing *Rettig Ents. v. Koehler*, 68 Ohio St.3d 274 (1994), paragraph one of the syllabus. "A party who fails to assert a compulsory counterclaim at the proper time is barred from litigating that claim in a subsequent lawsuit." *Ferrara* at ¶ 11, citing *Lewis v. Harding*, 2009-Ohio-3071, ¶ 12 (8th Dist.).

{¶ 19} At the time appellees filed their motion to dismiss, the housing court action was ongoing. By the time the trial court issued its opinion dismissing the case, however, the housing court had entered final judgment on Glenville's claim for money damages, terminating the housing court action. Whether viewed through the lens of subject-matter jurisdiction or res judicata, we find that the trial court did not err in dismissing the case because Cox's claims were compulsory counterclaims that were required to be pleaded in the housing court action.

{¶ 20} When appellees filed their motion to dismiss, i.e., when the housing court action was still in progress, the procedural posture of this action was similar to *Maduka v. Parries*, 14 Ohio App.3d 191 (8th Dist. 1984). In *Maduka*, the defendant-landlord filed a forcible-entry-and-detainer action against the plaintiff-tenant in the housing division of the Cleveland Municipal Court. The defendant-landlord subsequently amended the complaint to include a claim for money

damages (back rent). As in the present case, "[w]hile [the housing court] proceeding pended, the plaintiff filed the present suit in the court of common pleas." *Id*. at 191. The *Maduka* Court described the complaint filed in common pleas court:

> The plaintiff's complaint contains seven counts asserting grounds for recovery. Counts I through IV patently concern issues stemming directly from the Housing Court proceeding. Count V concerns interference with the United States mail. Count VI alleges malicious prosecution and abuse of process. Count VII sounded in tort for an intrusion on the plaintiff's right to privacy. On January 25, 1983, the plaintiff was granted leave to supplement the complaint. An additional count was alleged seeking damages in tort for personal injury suffered by the plaintiff on the premises by reason of negligent maintenance and repair.

*Id*.

{¶ 21} In *Maduka*, as in the present case, the issue of possession was rendered moot when the tenant vacated the premises, but "the unpaid rent issue remained." *Id*. at 192. This court noted that money damages issues were commonly joined with forcible-entry-and-detainer claims and specifically referred to the "incidental powers of the housing courts," quoting R.C. 1901.131 in full:

> "Whenever an action or proceeding is properly brought in the housing division of a municipal court, the housing division has jurisdiction to determine, preserve, and enforce all rights involved in the action or proceeding, to hear and determine all legal and equitable remedies necessary or proper for a complete determination of the rights of the parties, including, but not limited to, the granting of temporary restraining orders and temporary and permanent injunctions, to render personal judgment irrespective of amount in favor of any party, and to render any judgments and make any findings and orders in the same manner and to the same extent that the court of common pleas can render judgment or make a finding or order in a like action or proceeding."

*Id.* at 192, quoting R.C. 1901.131.[3]

{¶ 22} This court then addressed the matter of subject-matter jurisdiction. Specifically, it considered whether, under Civ.R. 13(A), the common pleas court was deprived of jurisdiction because the plaintiff-tenant's claims were compulsory counterclaims that should have been raised in the municipal court housing division. It first noted that "[t]he factual backgrounds of the claims need not be identical, as long as they are *logically related.*" (Emphasis added.) *Maduka* at 193, citing *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1071 (2d Cir. 1977). Upon review of the complaint, the *Maduka* Court determined the claims were indeed logically related and that the common pleas court lacked jurisdiction:

> It is logical to require the plaintiff to raise her claims in the present case as counterclaims in the Housing Court. For analysis of her contentions reveals that all, including those sounding in tort, arise from complaints stemming from the landlord-tenant relationship. And they concern either the defendant's maintenance of the premises, or actions taken by the defendant in an effort to oust the plaintiff from possession. The common source and overlap in evidence leads to the conclusion that the plaintiff's claims fall within the compulsory counterclaim mandate of Civ.R. 13(A). *Exclusive jurisdiction of plaintiff's claims was in the housing division of the municipal court in which the action in forcible entry began.*

(Emphasis added.) *Id.* at 193.

---

[3] The current version of the statute is substantially identical to the version existing at the time this court decided *Maduka*. R.C. 1901.131 was later updated to add a reference to municipal court environmental divisions. The current version also includes changes to the concluding phrase. Rather than "in the same manner and to the same extent that the court of common pleas can render judgment or make a finding or order in a *like* action or proceeding," the statute now reads "in the same manner and to the same extent that the court of common pleas can render *a* judgment or make a finding or order in a *similar* action or proceeding."

{¶ 23} The *Maduka* Court's application of a logical relation test is consistent with the Ohio Supreme Court's decision approximately ten years later in *Rettig Ents.*, 68 Ohio St.3d 274 (1994). There, the Ohio Supreme Court likewise turned to federal precedent and adopted the same test. *Id*. at 278. With respect to Civ.R. 13(A) compulsory counterclaims and the logical relation test, it held:

> The "logical relation" test, which provides that a compulsory counterclaim is one which is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts, can be used to determine whether claims between opposing parties arise out of the same transaction or occurrence.

*Id*. at paragraph two of the syllabus. *See also Ferrara*, 2016-Ohio-5144, at ¶ 11 (8th Dist.).

{¶ 24} In *Sherman v. Pearson*, 110 Ohio App.3d 70 (1st Dist. 1996), the First District not only followed *Maduka* but cited both *Maduka* and *Rettig Ents.* in discussing the "logical relation" test. *Id*. at 72-73. In addition, and relevant here, the Ohio Supreme Court held in *Rettig Ents.* that "multiple claims are compulsory counterclaims where they 'involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.'" *Rettig Ents.* at 279, quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961).

{¶ 25} We view *Maduka* as controlling. Indeed, in that case, certain counts of the complaint, which included personal-injury and other claims, were arguably more tenuously related to the underlying lease and the landlord-tenant relationship than in the present action. For example, Count V of Maduka's complaint "alleg[ed]

the obstruction of United States mail." *Maduka*, 14 Ohio App.3d at 193, fn. 6 (8th Dist. 1984). This court found that even that claim was logically related to the landlord-tenant relationship because it was "related to the allegation that the defendant in the present suit intercepted a summons mailed to the plaintiff when she was the defendant in the original forcible entry action which gave rise to the current controversy." *Id.* The court therefore found that "there is an intertwining of claims making them 'logically related' and highlighting the good sense of disposition of all the claims in the case in one forum." *Id.*

{¶ 26} The same holds true in this case. Cox's entire complaint, including Count 2, which sounds in negligence and breach of fiduciary duties, relates to the lease and to the landlord-tenant relationship. As appellees note, Cox offered no factual allegations to support her negligence and breach-of-fiduciary-duties claim apart from incorporating the previous paragraphs of her complaint, all of which related to the lease agreement, its option to purchase, rent purportedly due, the eviction, and ultimately the allegation of breach of contract contained in Count 1.

{¶ 27} As appellees acknowledge, the Ohio Supreme Court distinguished *Maduka* in *State ex rel. McGraw v. Gorman*, 17 Ohio St.3d 147 (1985), but only because of the municipal court monetary limit existing at the time. Effective July 1, 1997, the monetary limit was removed for both municipal court housing divisions and environmental divisions. R.C. 1901.17. Moreover, even if the monetary limit had not been removed, Cox still would have been required to plead her compulsory counterclaim in municipal court. *See Behrle v. Beam*, 6 Ohio St.3d 41, 45, fn. 1

(1983) ("[I]f a party has a compulsory counterclaim and its amount is over the monetary jurisdiction of the municipal court, it still must be pleaded in the responsive pleading."). The remedy, at that juncture, would be to certify the case to the court of common pleas. *Id. See also Sherman*, 110 Ohio App.3d at 76 (1st Dist. 1996).

{¶ 28} Pursuant to *Maduka*, the trial court did not err in determining that Cox's claims were compulsory counterclaims that were required to be pleaded in the municipal court action. Moreover, as noted above, by the time the trial court issued its ruling, the housing court had entered final judgment on the merits of Glenville's housing-court claim. "In addition to promoting judicial economy, the rule" requiring the timely assertion of compulsory counterclaims "is designed to assist courts with the 'orderly delineation of res judicata.'" *Ferrara*, 2016-Ohio-5144, at ¶ 11 (8th Dist.), quoting *Lewis* 2009-Ohio-3071, at ¶ 12 (8th Dist.).

{¶ 29} According to the doctrine of res judicata, "'a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the same transaction or occurrence that was the subject matter of a previous action.'" *Beavers v. PNC Bank, Natl. Assn.*, 2013-Ohio-5318, ¶ 14 (8th Dist.), quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995). "For purposes of res judicata analysis, a 'transaction' is defined as a 'common nucleus of operative facts.'" (Cleaned up.) *Beavers* at ¶ 14, quoting *Grava* at 382, quoting 1 Restatement of the Law 2d, Judgments, Section 24, 198-199, Comment b (1982). As this court has held:

Res judicata bars a claim when the following four elements are met: (1) there is a final, valid decision on the merits by a court of competent jurisdiction; (2) the second action involves the same parties or their privies as the first; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of the transaction or occurrence that was the subject matter of the previous action.

*Beavers* at ¶ 15, citing *Lenard v. Miller*, 2013-Ohio-4703, ¶ 27 (8th Dist.), citing *Portage Cty. Bd. of Commrs. v. Akron*, 2006-Ohio-954, ¶ 84.

{¶ 30} This case ticks all the boxes under res judicata. First, there is a final, valid decision on the merits by a court of competent jurisdiction. Appellees submitted a supplemental filing to the trial court containing a certified copy of the housing court's final judgment on Glenville's claim for money damages, which terminated the case. Second, although Glenville was the sole plaintiff below, both Famicos and Glenville are parties to the lease agreement, which identifies the two entities as "Landlord." This establishes privity for res judicata purposes. *Crenshaw v. Integrity Realty, LLC*, 2012-Ohio-4166, ¶ 8-9 (8th Dist.). Consideration of the third and fourth elements dovetails with our conclusion, already stated, that Cox's claims filed in common pleas court were compulsory counterclaims in housing court. The claims arose from the same transaction or occurrence, namely, the landlord-tenant relationship, and they could have been litigated in housing court.

{¶ 31} "'The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it.'" *Ferrara*, 2016-Ohio-5144, at ¶ 11 (8th Dist.), quoting *Natl. Amusements v. Springdale*, 53 Ohio St.3d 60, 61 (1990). A party's failure to assert a compulsory counterclaim will

bar that party from litigating the claim in a subsequent lawsuit under the doctrine of res judicata. *Geauga Truck & Implement Co. v. Juskiewicz*, 9 Ohio St.3d 12, 14 (1984). Based on the foregoing analysis, the trial court properly granted summary judgment in favor of appellees on Cox's claims, and her assignment of error is overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR